UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VALERIE JOHNSON-PARKS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 09-1492 (RMC) |
| D.C. CHARTERED HEALTH PLAN, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Plaintiff Valerie Johnson-Parks has filed a complaint asserting claims for disability discrimination under the Americans with Disabilities Act ("ADA"). 42 U.S.C. §§ 12101 et seq. The defendant D.C. Chartered Health Plan ("Chartered") has filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. The motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, a registered nurse and former employee of the defendant, had a known back injury incurred in a prior job when Chartered hired her in early 2001 to work as a Registered Nurse Case Manager/Telephonic Utilization Review Nurse. Am. Compl. ¶¶ 14-16. She performed her work for Chartered via telephone, facsimile and computer from a station in Chartered's office. *Id.* ¶ 20. In September 2002, she was promoted to Team Leader for the Telephonic Utilization Review Nurses. *Id.* ¶ 18. While at work in late December 2003, her back

injury became severely aggravated, triggering a 6-week sick leave of absence. *Id.* ¶ 22; Opp'n, Ex. A at 1.[1] Supported by documentation from her treating physician, she requested that she be allowed to work from home. *Id*. ¶ 25. Although Chartered provided her this accommodation, her supervisor, Karen Morris, began to demand that plaintiff work from the office. *Id.* ¶¶ 26, 29. In October 2004, Chartered sent a letter to plaintiff's physician asking whether she would be able to begin working in the office and to travel. *Id.* ¶ 32. The physician responded by asking Chartered to continue to support plaintiff's work-from-home accommodation. In February 2005, without prior discussion or warning, Chartered sent a letter to plaintiff stating that her work-from-home accommodation was no longer tenable, and advising her to either 1) pursue leave through the Family Medical Leave Act; 2) seek long-term disability compensation; 3) return to work by February 25, 2005; or 4) face termination. *Id.* ¶¶ 34-36. Her physician again requested continuation of the work-from-home accommodation, and Chartered allowed her to continue working from home as a Registered Nurse Case Manager/Telephonic Utilization Review Nurse, but removed plaintiff as Team Leader. *Id.* ¶ 38.

On October 4, 2005, Ms. Morris and Chartered's Medical Director, Dr. Orr, citing a specific unsatisfactory discharge plan for a patient as the reason, told plaintiff that if she did not resign she would be fired. Opp'n, Ex. A at 4. Plaintiff asked to meet with a representative from

---

[1] Defendant does not concede that Exhibit A to the Plaintiff's Opposition is what it purports to be, that is, a document submitted to the Equal Employment Opportunity Commission on August 4, 2006. *See* Reply at 2 n.1. However, the defendant does not argue that either the general or specific content of the document appended as Exhibit A to the Plaintiff's Opposition differs in any material respect from the one it believes was in fact submitted to the EEOC. Nor does defendant submit what it contends was the document that was actually submitted. Accordingly, for the purposes of deciding this motion, the Court will assume that the substance of Exhibit A to Plaintiff's Opposition was submitted to the EEOC on August 4, 2006.

the Human Resources Department. *Id.* Late the following day, plaintiff met with the Director of Human Resources along with Dr. Orr, Ms. Morris, and Francis Smith, a lawyer for Chartered. *Id.* During this meeting, plaintiff stated that she was not responsible for the unsatisfactory discharge plan, and noted that Chartered was not following what she understood to be the usual steps toward involuntary termination. *Id.* at 5. On Monday, October 10, she contacted Chartered to determine her employment status, but did not receive a response, and worked through the day for Chartered. *Id.* at 6. Late in the work day on October 10, she received an oral directive from a supervisor at Chartered to stop work. *Id.* The following day, October 11, Chartered arranged for boxes to be delivered to her home and instructed her to use the boxes to pack her files. *Id.* On October 13, 2005, while packing, plaintiff discovered that a termination letter from Chartered was taped to the side of one of the boxes. *Id.* She read the letter and learned that Chartered had terminated her employment effective October 10, 2005. *Id.*

On August 4, 2006, plaintiff submitted an eleven page single-spaced, typed statement to the Washington Field Office of the Equal Employment Opportunity Commission ("EEOC"), and a completed "Intake Questionnaire" form used by that office. *See* Mot. to Dismiss, Ex. 2, Ex. A; Opp'n, Ex. A. The EEOC prepared a "perfected charge" and, on December 4, 2006, mailed it to plaintiff for her signature. *Id.*, Ex. 2, Ex. B. The signed and dated "perfected charge," received by the EEOC on December 11, 2006, was forwarded to the defendant through an EEOC Notice dated December 22, 2006. *Id.*, Ex. 1, Ex. A. In July 2007, the charge was transferred to another field office for investigation. On September 11, 2008, the EEOC issued a finding of probable cause of discrimination, and on or about May 1, 2009, the EEOC issued a Notice of Right to Sue, which plaintiff received on May 5, 2009. Am. Compl.

¶ 43. Plaintiff submitted her pro se complaint for filing in this court on July 28, 2009. Compl. at 1. Her amended complaint asserts four disability claims, alleging disparate treatment, a failure to accommodate, retaliation and a hostile work environment. *See* Am. Compl. ¶¶ 45-84.

In its motion to dismiss, Chartered contends that Ms. Johnson-Parks received notice of her termination on October 4, 2005, making her submissions to the EEOC on August 4, 2006, untimely because they were not filed within the 300-day time period allowed for filing a written charge of disability discrimination. Mot. to Dismiss at 7-8. Further, Chartered maintains that the December 2006 perfected charge, and not the August 2006 submissions to the EEOC, should be treated as the written charge for the purposes of the filing deadline for EEOC administrative charges. *Id.* at 6-7. In addition, Chartered maintains that any claim arising from any discreet act that pre-dates Chartered's termination of Ms. Johnson-Parks is time-barred. *Id.* at 9. Chartered also argues that there are alternative grounds for dismissing two of the claims. Specifically, it argues that the retaliation claim is barred because Ms. Johnson Parks did not administratively exhaust that claim, *id.* at 10-12, and that the hostile environment claim warrants dismissal because it is insufficiently specific to meet the minimum pleading standards. *Id*. at 5, 10 n.9.

## II. LEGAL STANDARDS

A court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). In determining whether a

complaint fails to state a claim upon which relief may be granted, generally a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court need not accept a plaintiff's legal conclusions or inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint. *Id.* Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atlantic*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). It requires a "showing" and not just a blanket assertion of a right to relief. *Id.* at 555 n. 3. In short, a complaint fails "if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and alterations omitted).

In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). "[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999) *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) (citing *Greenberg v. The Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir. 1999)). Further, where a motion to dismiss is based on a contention that the claim is time-barred, it may be granted "only if the complaint on its face is conclusively time-barred," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), or if "no reasonable person could disagree on the date" on which the

cause of action accrued. *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C. Cir. 1989).

## III. DISCUSSION

Claims made under the ADA are subject to limitations periods set forth in 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 12177(a) (applying the limitations periods to ADA claims). "The statute of limitations for ADA claims begins to run at the time when plaintiff knew or had reason to know of the injury that serves as the basis of the claim." *Gupta v. Northrop Grumman Corp.,* 462 F. Supp. 2d 56, 58 (D.D.C. 2006); *see also Long v. Howard Univ.,* 512 F. Supp. 2d 1, 14 (D.D.C. 2007) ("[A] claim accrues under . . . the ADA . . . when the plaintiff knew or had reason to know of the injury serving as the basis for his claim.") (internal quotation marks and citation omitted). Plaintiff had 300 days from the date of accrual of her cause of action to submit an administrative charge alleging claims under the ADA. *See* 42 U.S.C. § 2000e-5(e)(1); *Gordon v. District of Columbia*, 605 F. Supp. 2d 239, 244 (D.D.C. 2009).

Defendant argues that plaintiff's claims are time-barred. Key to that argument is defendant's contention that plaintiff's cause of action accrued on October 4, 2005, when two of her supervisors told her that if she did not resign they would fire her. The record facts, however, do not establish that Chartered notified plaintiff of an adverse action at that time; rather, the facts establish that on October 4 Chartered notified Ms. Johnson-Parks of a conditional intention to take an adverse action at some unspecified point in the future.[2] That much, without more, does

---

[2] Indeed, the rule the defendant urges this Court to adopt is incapable of explaining why plaintiff's cause of action in this case did not arise in February 2005, by virtue of a similar statement of intent expressed in the letter threatening Ms. Johnson-Parks with termination if she did not return to work by February 25, 2005 — which she did not. *See* Am. Compl. ¶ 34.

not make a cause of action accrue, as a cause of action does not arise until the plaintiff knows of the adverse action and its cause. *Gupta,* 462 F. Supp. 2d at 58.

Chartered relies on the decision in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), to support its position that plaintiff's cause of action accrued on October 4, but that reliance is misplaced. The point of *Ricks* is that the cause of action for employment discrimination accrues when the plaintiff knows of the adverse action, which, in that case, was the decision to deny tenure to Ricks. *Id.* at 257. Denying tenure to Ricks was not a statement of a conditional intention with no effective date; rather, it was ***itself*** the adverse action with "delayed but inevitable consequences." *Id.* at 257-58. *Ricks* does not hold that a cause of action accrues with a statement of intent to act at a future unspecified date. Rather, *"Ricks* and cases in its wake hold that a discharge with a deferred effective date entails only one discriminatory decision. An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995) (internal quotation marks and citation omitted).[3]

---

[3] The other two cases Chartered cites are also easily distinguished on their facts and do not support Chartered's position in this case. In one case, where the employee had been given written notice that his disability would not be accommodated and the employee had taken other employment, the court refused to treat the date of the employee's letter seeking reconsideration — six months later — as the date his discrimination cause of action accrued. *Smith v. Bruno's Supermarkets, Inc.*, 2006 WL 2456084, *7-9 (S.D. Ala. Aug. 22, 2006). In the other case, *Calhoun v. Fed. Nat'l Mortg. Ass'n,* 823 F.2d 451 (11th Cir. 1987), the plaintiff was told in July 1982 that his services were no longer required and that he should contact a company official to discuss severance terms. *Id.* at 452. The employee cleaned out his office and quit work the following day. *Id.* The severance terms he negotiated extended his severance pay over the next year so as to provide him with 20 years of service for retirement purposes. This agreement was memorialized in a memorandum dated August 1982 that specified that the employee's effective termination date would be August 5, 1983. Later, the employee attempted to use the termination date of August 5, 1983, as the date his discrimination cause of action accrued. The Eleventh Circuit, affirming the district court, stated that "[t]he proper focus for purposes of establishing

It is not necessary to decide here whether plaintiff's cause of action accrued on October 10, 2005, when — in the context of the October 4 and 5 communications from Chartered — she received the end-of-day oral directive to stop work, or whether it did not accrue until she read the termination letter on October 13. Chartered did not communicate to plaintiff an effective date of termination until late in the day on October 10, 2005, at the earliest. Thus, Ms. Johnson-Parks' cause of action accrued no earlier than October 10, 2005, and not, as Chartered contends, on October 4, 2005. Therefore, plaintiff had through August 6, 2006, at least, to file a timely charge with the EEOC.

On August 4, 2006, plaintiff submitted to the EEOC a completed EEOC form Intake Questionnaire and an eleven page statement of factual allegations against Chartered. Chartered argues that these submissions do not constitute a written "charge," and therefore, plaintiff's administrative charges were not filed timely. Chartered contends that the "charge" in this case is the one the EEOC refers to as the "perfected charge," which the EEOC drafted on the basis of plaintiff's August 4 submissions and sent to her for signature on December 4, 2006, and which was forwarded to defendant by notice from the EEOC dated December 22, 2006.

Whether the plaintiff's August 4, 2006, submissions constitute an administrative "charge" for timeliness purposes depends on whether the content of the submissions complied with EEOC regulations[4] and yield a reasonable inference that the submissions seek redress. In

---

the time at which the limitations period begins to run 'is on the time of the *discriminatory act,* not the point at which the consequences of the act become painful.'" *Id*.

[4] The applicable EEOC regulations provide as follows:

> (a) Each charge should contain the following:
> (1) The full name, address and telephone number of the person

other words, an ADA administrative "charge is sufficient when it is a 'written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of[,]'" and also objectively manifests a complainant's intent to "activate the Act's machinery." *Nesemeier v. Commonwealth Land Title Ins. Co.*, Civil Action 03-1971, 2004 WL 2070825, *3 (D.D.C. Sept. 10, 2004) (quoting 29 C.F.R. § 1601.12(b) and citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir. 2001); *Whitmore v. O'Connor Mgmt., Inc.*, 156

---

making the charge except as provided in § 1601.7;
(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);
(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12.

F.3d 796, 799 (8th Cir. 1998); *Philbin v. Gen'l Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 324-25 (7th Cir. 1991); and *Bihler v. Singer Co.,* 710 F.2d 96, 99 (3d Cir. 1986)); *see also Federal Express Corp. v. Holowecki,* 128 S. Ct. 1147, 1158 (2008) (adopting an objective manifest-intent approach in age discrimination cases, stating that "[i]f a filing is to be deemed a charge[,] it must be reasonably construed [from the standpoint of an objective observer] as a request for the agency to take remedial action to protect the employee's right or otherwise settle a dispute between the employer and the employee") (citing *Wilkerson,* 270 F.3d at 1319, and *Bihler,* 710 F.2d at 99).

The papers plaintiff submitted on August 4, 2006 not only comply with the pertinent regulations, but may also be reasonably construed as a request for agency action. Ms. Johnson-Parks' Intake Questionnaire named the parties involved, clearly identified "disability" and "retaliation" as the bases she perceived for her discrimination charge, and expressly referenced the eleven page factual statement she submitted the same day, Mot. to Dismiss, Ex. 2, Ex. A at 3, which provided detailed information about the injuries alleged and identified other employees who were allegedly treated differently. *See* Opp'n, Ex. A. Her factual statement carried a notation indicating that she was well aware of the filing deadline and did not intend to miss it. *Id.* at 1 ("Urgent time limit is about to expire!!"). The agency itself inferred that Ms. Johnson-Parks intended to file a discrimination claim as evidenced by its formulation of a perfected charge based on the submissions. Accordingly, the Court finds that the submissions the plaintiff made to the EEOC on August 4, 2006, constitute a written charge of disability

discrimination, and that the charge was timely filed before the 300-day limitations period had expired.[5]

Chartered also argues that Ms. Johnson-Parks cannot maintain a retaliation charge in this action because she did not make such a charge in the underlying administrative "charge." While plaintiff's Intake Questionnaire identified retaliation as a basis for discrimination, the associated protected activity in her EEOC filing is not the same as that identified in the amended complaint. *Compare* Mot. to Dismiss, Ex. 2, Ex. A at 3 (identifying her complaint about her supervisor, Ms. Morris, as the protected activity); *with* Am. Compl. ¶¶ 67-75 (alleging retaliation for requesting reasonable accommodations). The Court concludes that the retaliation claim pled was not administratively exhausted and, therefore, it cannot be maintained here. The retaliation claim will be dismissed for failure to exhaust.

Chartered also contends that plaintiff's harassment/hostile work environment claim is insufficiently specific to pass muster under the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 US 544, and *Ashcroft v. Iqbal*, 129 S. Ct. 1937. *See* Mot. to Dismiss at 5, 10 n.9. The amended complaint alleges that Ms. Morris demanded that plaintiff report to the office to work, and that Ms. Morris's behavior was so pervasive and severe that it prompted plaintiff to complain. Am. Compl. ¶¶ 29-31. The underlying August 4, 2006, submissions to the EEOC referenced in the amended complaint, *see id.* ¶ 43(a), provide additional detail on several instances of Ms. Morris's conduct toward the plaintiff. The

---

[5] To the extent that it would permit a procedural default due to a slow agency process and not to any act by the plaintiff, equitable considerations also militate against adopting Chartered's position.

defendant's argument that it has insufficient notice of the allegations to prepare a proper defense, *see* Mot. to Dismiss at 10 n.9, is unavailing in light of this record.

## IV.  CONCLUSION

Because Ms. Johnson-Parks' causes of action for unlawful disability discrimination through disparate treatment, failure to accommodate, and hostile environment — all culminating in the act of terminating her employment — did not accrue before October 10, 2005, and because her August 4, 2006, submissions to the EEOC are reasonably construed as charges, those claims are not time-barred.  Because the retaliation claim pled in the amended complaint is not the one that was alleged in the underlying administrative charges, it is barred for failure to exhaust.  Accordingly, the defendant's motion to dismiss will be granted only as to the claim of retaliation, and will be denied in all other respects.  A memorializing Order accompanies this Memorandum Opinion.


Date: May 25, 2010                                              /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge