**STEINBACH EXHIBIT D**

**DODOO DEPOSITION EXCERPTS**

Capital Reporting Company
Dodo, Vera  01-11-2011

1

UNITED STATES DISTRIST COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------:
VALERIE JOHNSON-PARKS,            :
                                  :
        Plaintiff,                : CASE NO.
                                  :
vs.                               : 1:09-CV-01492-RMC
                                  :
D.C. CHARTERED HEALTH PLAN,       :
INC.,                             :
                                  :
        Defendants.               :
---------------------------------:

                       Washington, D.C.
                  Tuesday, January 11, 2011

Deposition of:

                    VERA DODO

called for oral examination by counsel for

Plaintiff, pursuant to notice, at the Law Office of

Denise M. Clark, 1250 Connecticut Avenue, Suite 200,

Washington, D.C., before Constance H. Rhodes, of

Capital Reporting Company, a Notary Public in and

for the District of Columbia, commencing at 10:52

a.m., when were present on behalf of the respective

parties:

(866) 448 - DEPO
www.CapitalReportingCompany.com   © 2011

Capital Reporting Company
Dodo, Vera  01-11-2011

**Page 2**

```
 1        APPEARANCES
 2  On behalf of Plaintiff:
 3    DENISE M. CLARK, ESQUIRE
 4    Law Office of Denise M. Clark
 5    1250 Connecticut Avenue
 6    Suite 200
 7    Washington, D.C. 20036
 8    (202) 293-0015
 9
10  On behalf of Defendants:
11    KATHLEEN WILLIAMS, ESQUIRE
12    Epstein Becker & Green, P.C.
13    1227 25th Street, Northwest
14    Suite 700
15    Washington, D.C. 20037
16    (202) 861-1871
```

**Page 3**

```
 1          CONTENTS
 2  EXAMINATION BY:              PAGE
 3    Counsel for Plaintiff       4,76
 4    Counsel for Defendant      73,85
22  (* No exhibits were marked.)
```

**Page 4**

```
 1          PROCEEDINGS
 2  WHEREUPON,
 3          VERA DODO
 4  called as a witness, and having been first duly
 5  sworn, was examined and testified as follows:
 6      EXAMINATION BY COUNSEL FOR PLAINTIFF
 7  BY MS. CLARK:
 8     Q  Good morning.
 9     A  Good morning.
10     Q  Could you state your name for the record,
11  please.
12     A  My name is Vera A. Dodo.
13     Q  Where are you currently employed?
14     A  Excuse me?
15     Q  Where are you currently employed?
16     A  At Chartered Health Plan.
17     Q  And what is your current position?
18     A  Associate compliance officer and risk
19  manager.
20     Q  And how long have you held that position?
21     A  From 2008 until now.
22     Q  Now, how long have you been employed at
```

**Page 5**

```
 1  Chartered?
 2     A  I was initially employed 2004, June 14th,
 3  2004.
 4     Q  Okay.
 5     A  And I left February 18th, 2005.
 6     Q  And then?
 7     A  And then returned June 19, 2006, until
 8  today.
 9     Q  Okay. Great. Now, when you started in
10  June of 2004, what was your position?
11     A  Associate director of utilization
12  management.
13     Q  And what did that position require you to
14  do? What were your job responsibilities?
15     A  I supervised the case managers that work
16  with the patients in the hospitals and their intake
17  clerks.
18     Q  Now, were the case managers primarily
19  nurses?
20     A  Yes, ma'am.
21     Q  And when you started in June, who did you
22  report to?
```

Page 54

```
 1    A   I did not set her up for working from
 2   home.
 3    Q   Do you know who did?
 4    A   I think it was arrangement from her
 5   director, Karen. I don't know. I was not there.
 6    Q   Do you know what the procedures were under
 7   the HIPAA policy with paper documents?
 8    A   E-mails, for example, being sent out
 9   outside as opposed to be sent secured server. Paper
10   documents that Valerie was working on, I don't know
11   what procedure she was working under. And I had a
12   concern. If paper documentation is just being faxed
13   to her and she has it in her house, I wonder how
14   it's being kept.
15    Q   Did you ever discuss it with anyone?
16    A   That -- my concern?
17    Q   Yes, your concern.
18    A   My concerns. Concerns for supervising her
19   working from home?
20    Q   No. No. Your concerns about the paper.
21   Did you ever talk to Karen Morris about the paper
22   documents she may be receiving and how they were
```

Page 55

```
 1   being handled under the policy?
 2    A   No.
 3    Q   And why is that?
 4    A   Employee had been set up to work from home
 5   months or maybe a year before I got there. I was on
 6   orientation, and I left on the seventh month of
 7   working there. When I ask why she working from
 8   home -- because my concern is I have this person I'm
 9   supposed to supervise, haven't met her before, I do
10   not know what her actual work hours are while she's
11   there, and I sign her time sheet based on what she
12   put on it. And the HIPAA, paper is being faxed to
13   her from hospitals, patient information. Those were
14   my concerns that's why I asked why she was working
15   from home, and I was told that is her schedule.
16    Q   Okay. So let me make sure I understand
17   your testimony. Since you were told that was her
18   schedule, you did not make any further inquiry about
19   whether there was a particular procedure she was
20   supposed to follow for HIPAA purposes?
21    A   That is the decision of the director.
22    Q   Okay. And your testimony earlier was that
```

Page 56

```
 1   you signed her time sheet. You didn't have any
 2   issues with her time sheets?
 3    A   She worked from home before I got there.
 4   She always sent her time sheets in. She sent her
 5   time sheets. I look at it, I sign it, because she
 6   did not call out sick. If you don't call out sick
 7   and you were working from home and you give me eight
 8   hours, five days a week, I assume you are because I
 9   don't have a reason not to believe that she wasn't
10   working.
11    Q   Uh-huh.
12    A   And as I said, I never met her. I just
13   get the paper. There is no documentation -- Vera,
14   I'm sick today, I need to take time off, or
15   something. So as long as she's doing her work.
16    Q   Okay. And even though you may have had
17   concerns, you decided not to talk to Karen Morris or
18   anyone else about those concerns; is that correct?
19    A   What kind of concern?
20    Q   Well, you just expressed a number of them
21   about how you would supervise someone --
22    A   When I first came -- --
```

Page 57

```
 1    Q   No. I understand.
 2    A   -- and I was told my team leader works
 3   from home, those were the issues I raise. And I was
 4   told that's her schedule, and she set up to work
 5   from home. So that's where I left it.
 6        MS. CLARK: I want to take a break. I
 7   don't think I have much more. I don't know if you
 8   have any cross or not?
 9        MS. WILLIAMS: Just a couple.
10        (Whereupon, a brief recess was taken.)
11   BY MS. CLARK:
12    Q   Can you tell me what the long-stay report
13   is?
14    A   The long-stay report?
15    Q   Uh-huh.
16    A   A report on people that have like subacute
17   care going in to stay for a number of days after
18   being discharged from one hospital to another. And
19   sometimes in acute care, depending on the patient's
20   condition also, depending on how many days they stay
21   in, nurses are supposed to make a report.
22    Q   All nurses?
```

Capital Reporting Company
Dodo, Vera  01-11-2011

Page 74

1  time sheets; is that correct?
2  A  Yes.
3  Q  And you said at the time there was not a
4  problem with regard to any of the time sheets?
5  A  Yes. She was working from home, and she
6  puts eight hours on the thing.
7  Q  Did there come a time later, after the
8  termination of Valerie's employment, when you became
9  aware of an issue with regard to the time that she
10 reported?
11 A  Yes. I found out that since. Valerie
12 said she had a surgery some time I think in
13 October -- I don't remember -- yeah. And on her
14 time sheet she has full 8 hours for the whole week
15 and didn't take any time off. And I wasn't aware
16 that she had a surgery at the time that I signed the
17 time sheet, and it's perplexing to me to see that I
18 sign a time sheet. She's saying she was sick and
19 had surgery, but her work hours did not reflect what
20 she put on the time sheet, and I signed it. And
21 that bothers me. And then I started thinking, now,
22 what else has occurred that I was not aware of.

Page 75

1  BY MS. WILLIAMS:
2  Q  So is it your testimony that you signed a
3  time sheet indicating that she had worked eight
4  hours every day when in fact it appears she was
5  having surgery and recovering from surgery?
6  A  Yes. I did not know that she was having
7  surgery, and I didn't know she took any time off.
8  Q  Now, for the employees who reported to
9  you, were they required to tell you when they took
10 sick time?
11 A  Yes.
12 Q  Why was that?
13 A  It's a company protocol if you are sick,
14 you call in that you are not going to be there today
15 so that they will get someone else to cover your
16 work for the day. Yeah, they do that. So -- and it
17 really bothers me that I signed the time sheet and
18 later on found out that she had knee surgery. And I
19 don't know whether she was out for the week or not.
20 And that bothers me because that's --
21 Q  Just to be clear she didn't ask you to
22 cover for her?

Page 76

1  A  She didn't tell me. I did not know she
2  was having surgery. I didn't know she was sick.
3  And her time sheets reflect that she worked the
4  whole week that I signed, which contradicts what I
5  later on found out, that she had any surgery.
6  Q  Different topic. You testified that at
7  various times people perceived that Karen Morris was
8  mean to them and told you about it. And sometimes
9  you perceived that she was mean to you. Did you
10 form an opinion as to whether when she was mean it
11 was about work and case assignments or was it
12 personal or was it both?
13 A  It was work and case assignments.
14 Q  Was it always work?
15 A  Most of the time.
16 Q  And was it related to her impatience with
17 people's work?
18 A  Yes.
19     MS. WILLIAMS:  I have no further
20 questions.
21     FURTHER EXAMINATION BY COUNSEL FOR
22     PLAINTIFF

Page 77

1  BY MS. CLARK:
2  Q  I've got two follow-ups. Who told you
3  that Valerie had surgery?
4  A  I think -- I do not know what happened
5  when I was not there, but I was being -- I think I
6  was being questioned by Frenchie -- by Francis
7  Smith -- that Valerie says she had her surgery, and
8  I signed these time sheets.
9  Q  So Francis Smith told you that Valerie
10 told him she had surgery?
11 A  Yes. And I signed the time sheets reflect
12 that -- the time sheets that I signed before reflect
13 that she worked for full eight hours, what she sent
14 to me from home.
15 Q  Did Francis Smith tell you whether it was
16 an inpatient or outpatient surgery?
17 A  I think a knee surgery, and I don't -- I
18 don't know.
19 Q  So you don't know if it was some
20 arthroscopic surgery that could have been
21 outpatient, and she would have maybe been out for a
22 couple hours?

Capital Reporting Company
Dodo, Vera  01-11-2011

```
                                                              87

 1              CERTIFICATE OF NOTARY PUBLIC

 2           I, CONSTANCE HUNT RHODES, the officer

 3   before whom the foregoing deposition was taken, do

 4   hereby certify that the witness whose testimony

 5   appears in the foregoing deposition was duly sworn

 6   by me; that the testimony of said witness was taken

 7   by me in stenotypy and thereafter reduced to

 8   typewriting under my direction; that said deposition

 9   is a true record of the testimony given by said

10   witness; that I am neither counsel for, related to,

11   nor employed by any of the parties to the action in

12   which this deposition was taken; and further, that I

13   am not a relative or employee of any attorney or

14   counsel employed by the parties thereto, nor

15   financially or otherwise interested in the outcome

16   of the action.

17

18                          _____
                                   CONSTANCE HUNT RHODES
19                              Notary Public in and for the
                                      District of Columbia
20
     My commission expires:
21   January 1, 2013

22
```